Our third case for argument this morning is United States v. Anglin. Mr. Gansner. The real Mr. Gansner. Good morning, Your Honors. Thank you. My name is Anderson Gansner, and I represent the appellant in this case, Michael Anglin. If there's one lesson to take away from this case, I believe it's that timing matters. This case deals with a warrantless arrest, and that standard is time dependent. It asks, did the agents have probable cause at the exact moment of Michael Anglin's arrest? And the answer is no. My client's arrest was based solely on the word of an informant, Mr. Green, who changed his story about a key incriminating detail, who had no track record as an informant, had no clear motive to cooperate, and hardly knew anything about what the criminal activity, about what the conspiracy was supposed to be. So at that exact moment of my client's arrest, as he and Mr. Green are driving down the street, away from the location of the ringleader, Dave, there simply wasn't enough to base an arrest at that point. My client and Mr. Green might have been driving to the McDonald's down the street for breakfast. It was three more blocks. So at that exact moment, in that uncertain situation, relying on an unproven informant, the agents simply did not have probable cause. No grand jury, no judge would have formally charged Michael at that point, given what they knew right then. So an arrest was unwarranted. So what do you think the impact of our decision was in U.S. versus Anglin, where we determined that the same confidential informant's tips were sufficient to establish probable cause to arrest for the same crime? Your Honor, if there's one thing I could do over in my reply brief, I would want to kind of factually lay out the differences there, because that case is factually distinct. And I think there is actually nothing inconsistent with the holding in that case and granting the motion to suppress here. In that case, we're dealing with a seizure of Dave, the brother, the focal point, really, of the allegations from the informant, a person who has an armed robbery conviction already and is still serving a bank robbery conviction. And it's later in the day, it's about an hour or so later, there are agents outside his house, and at the time of that seizure, they see Dave walk out of his girlfriend's house and walk right to this white Cadillac. And that's very important, and it credits Green on multiple levels. First of all, it credits him for his earlier information the prior week when he said Dave has this girlfriend with this name, she drives a white Cadillac, so it confirmed that information firmly. And then it showed that his prediction that he had made that morning about Dave being at his girlfriend's house was correct. It's been validated. It amps up Green's credibility certainly more than it does in this case. And also, the record is different, because we had a trial here, and lots of things come out of the trial, and one of the things that came out was that Green had changed the story for no apparent reason about the number of firearms that he alleged to have seen, and that was not known to the panel in Dave's case. They cite the fact of three guns not knowing that it had been retracted and changed. In addition, there's also, I think, when you look at how the facts are laid out in Dave's case, they don't really seem to capture the confusion about what exactly was going on that morning and how Green's story was really kind of inconsistent up to about 20 minutes before Michael's arrest when the agent is driving to the scene. He finally gives them the target, but he can't really describe what it is. So I think there are, simply put, Your Honor, a lot of factual differences in that case. So it makes sense in that case, where Green's credibility is more established, they don't know about these concerning retractions, to say, okay, there, we have probable cause. That's enough for arrest. And I'd also note that that's an alternative holding. The case really primarily focuses on reasonable suspicion. But also, then you look at this case, and it's an earlier point, it's a different seizure, and again, the timing is crucial. They just don't have those predictions that came true in Dave's case here, and they're faced with a situation where Green is actually driving away from Dave, the ringleader. So it's, I think, a much weaker case factually, Your Honor, and I think it makes sense to say here, you know, we have reasonable suspicion. We have enough for a Terry stop, and that is something we have conceded all along. And the magistrate judge noted twice, it looks like there's enough reasonable suspicion, and we would concede that even with now knowing Green's changed story about the number of guns. There was still reasonable suspicion, but the officers blew right past that. They could have conducted a Terry stop in this case. They decided not to do that. Instead, they immediately seized my client, threw him in handcuffs, and marched him off on the police station. They actually came to the scene with a Bearcat, which is sort of an urban assault vehicle. It just shows that there was kind of a dramatic overreaction given the proof that they had of Mr. Green's allegations. Now, one thing I wanted to note here is with regard to informants, when we're talking about informants, obviously vetting is crucial, especially if you have an informant with no track record. And Mr. Green simply hadn't been vetted. They had first met him four days earlier. They knew that he had never been an informant before. They knew that he was still serving a federal sentence for bank robbery, and he just had a couple months left. He was at a halfway house, and he's asking for some compensation, like getting his supervision terminated earlier, which we all know really pales in comparison to the kind of benefit you can get from being an active informant out in the street where you can make an entire case go away. You can get years off your sentence. And he was just saying, you know, I'd maybe like a shorter term of release. And the agents didn't even promise him anything. So it's a very fishy circumstance. He didn't make any statements against his own interests. There was really no bona fides there. So if you think about, you know, the fluid scale of probable cause, that's not built up. With regard to verification, the only things they could verify were a few details that simply suggested that Green was familiar with the Anglins. These are not facts that, as the magistrate judge put it, carry a high degree of suspicion. And then you look at the details you give about the actual offense, which is crucial, and this court has always held, with regard to informants, what details can they give. For example, Judge Williams, in the Peck case you wrote, you said, you know, this informant's not good enough because she's not giving details about the actual crime. We want her to describe drugs. We want her to describe where things are located. And the equivalent here is, Green, tell us about what the plan is going to be. What is the robbery, you know, what's the robbery plan? On Friday, when they first talk to him, he has no idea. On Monday, he still doesn't know. He's sending midnight text messages. He still doesn't know what it is. And then he's talking to the agent while the agent's surveilling my client. He still doesn't know what the actual plan is. Then, finally, they've got a target, but the target he gives is he says it's a drug house, and he says it's by this one large intersection, a six-way intersection on Milwaukee's northwest side. He doesn't give any more detail. He doesn't know anything else. So he can't describe what the house looks like, what the address is, what street it's on, what kind of drugs they sell there, what the name of the dealer is. He really knows nothing, and that's deeply concerning and I think deeply harmful to his credibility, and also it prevents the agents from doing any verification. If an informant doesn't give you details, you're not able to go out and check them out and really try to work with your informant and build them up. Isn't part of Green's credibility the fact that he was at the time serving a federal sentence and that if he was revealed to have lied to law enforcement agents, he could have gotten in very serious trouble? You're right. He could have gotten his supervised release revoked, even though he wasn't at the time yet on supervised release, but he could have gotten it revoked. He could have suffered all sorts of consequences. That's true. He was under a microscope at the time. Well, he had voluntarily put himself under that microscope, Your Honor, so I think that cuts both ways because, again, his motivations for cooperating are really unclear given that he doesn't have that much to gain. But it's a very high-risk proposition. There is a high-risk proposition. He had a lot to lose. I don't disagree with that, but it's not that much different than a normal informant who, let's say, is just caught with drugs on them and is trying to work off a drug case. That person, if they lie to the police, the police are going to say, forget it, we're going to go ahead and indict you with this. And Green is in that same situation. So it's really maybe the consequences because of maybe a new case, supervised release being revoked, a 1001 charge. Maybe they're a little bit more, but I don't think it's much more than any other informant who the government has the goods on. Everyone is working to do something. Everyone is motivated to tell the truth and to try to cooperate and be productive. There's a standard condition of supervised release, and I know that Anglin at the time was not on supervised release, but there's a standard condition of supervised release that requires the defendant to tell somebody in a position of authority, the probation officer for somebody on supervised release, if the defendant is talking with people and interacting with people whom the defendant knows is engaged or about to be engaged in criminal activity. Was the same condition imposed on Mr. Green as part of his placement at the halfway house? I don't know that, Your Honor. I'm sorry. It's not on the record. I haven't seen that. I would assume that with regard to conditions of supervision, they don't go into effect until you're out, right, until you're being supervised by your probation officer. And he didn't ever put that forward as a, hey, here's why I'm coming to talk to you. I want to make sure I'm following the rules of my supervision. And, again, the motives that he had for coming forward just simply don't make sense given what we all know about how much you can gain from being an informant. So for all those reasons, I think it just simply is this is exactly the type of case where you look at it in comparison to Dave's case and you say, you know, the officers just went too far. They had an option available to them. They could have conducted a Terry stop. They decided not to do that. And as a result, the evidence that flows from this flat-out arrest should be suppressed. Now, just briefly, I'd like to make a few quick comments about sentencing because I see my time is almost up. If the court does not grant the motion to suppress in this case, we would request that it remand for a full resentencing. I believe the government is acknowledged, and I think the record shows that the district judge just simply didn't address the two primary sentencing arguments. Those arguments were not waived because the judge asked this waiver question that's been allowed by Garcia-Seguro. Garcia-Seguro explicitly says you have to do it after the sentence is final but before notice of appeal is advised. That didn't happen here. It was well after notice of appeal was advised, and my client actually said, I want to appeal, and the judge said, I'll have the court do it for you. So it was far too late. And the record just shows that they did not, the judge just didn't engage with those questions. And then, of course, there are serious issues with regard to supervised release. The judge here, you look at the record, he spent less than a page discussing supervised release conditions, less than half a page talking about the conditions. There's no give and play with defense counsel or the government about what the conditions should be, whether they should be addressed. And I think that's just treating it. I take it that the judge, however, did ask, do you need me to say more about this? And the counsel said no. Your Honor, if you look at that question in the context, the judge had just explained why supervised release was necessary. And then the question that follows is, do I need to explain more why supervised release generally is necessary? He was not talking about the particular conditions. And if you look up that page, he says, you know, I'm imposing the standard conditions, the mandatory ones for the reasons listed in the pre-resentence report, and I'm imposing these other conditions. And then he skips over giving any justification for them whatsoever. It's just a summary procedure under CAPAS. Under all this Court's proceedings, it's kind of a textbook example of how not to treat supervised release. Did he impose any conditions that were not recommended in the pre-sentence report? I don't believe so, Your Honor. No, I'm sorry. He unilaterally altered one without any notice. He just said, I'm changing this one. This is what I'm imposing. All the other ones came from the pre-sentence report, Your Honor. Okay. That could be a problem. Do you have any comment on our holding in block that if all the judge does is adopt the conditions recommended in the pre-sentence report, he doesn't really need to say more? Well, what happened in block, Your Honor, is the judge actually, I believe he distributed to the parties in advance of sentencing, a list of these are the conditions I'm considering, right? So it went out to them. And then at the hearing, he asked, listen, you have all had plenty of notice about the conditions I'm thinking about. Do you have any objections to them? They discussed them on the record. I really think what occurred in block is miles away from what occurred in this particular case in terms of how supervised release was treated. Certainly he didn't read them on the record, and so it might have been a technical violation of the rules in capice. But you have a thorough discussion. You have plenty of notice. There's nothing in the record to assume that that happened here, especially given that my client is asked about the pre-sentence report early on, and in a back and forth with the judge. And he says, you know, Judge, there's some things in there I didn't like about it. And the judge said, okay, we'll get back to that. And then that never happens. So for those reasons, Your Honor, if the court does not grant the motion to suppress, we would ask that the court remand for a full resentencing in this case. Thank you very much. Thank you, Counsel. And now the real Mr. Koenig. Good morning. May it please the Court. I am the real Mr. Koenig, and I appear on behalf of the United States this morning. I think respectfully my opponent loses sight of some first principles about probable cause that are very important in this case. As the case law demonstrates over and over again, probable cause is a flexible, non-technical concept, and it rests on practical considerations about everyday life. It doesn't require proof of a substantive crime, and it doesn't require in this context that informants be infallible. It also doesn't require perfect corroboration of information that comes from either a known informant or an unknown informant. What we had on December 17, 2013, was two things. The officers knew that Michael Anglin and his brother had relatively recent convictions for gun-related crimes, and they had information from a, quote, reasonably credible informant who said that he had seen the Anglin brothers with firearms in recent days and that they were planning to do an armed robbery that morning. We submit that under these circumstances it was reasonable to arrest Michael Anglin rather than detain him briefly for questioning. I'd like to review some of the factors that made Mr. Green credible. They were covered by this court in its decision in the Dave Anglin case, and in response to your question, Judge Williams, I would say there are some differences between the two cases in terms of their posture and how they came before the court, but the pivotal issue in Dave Anglin's case was the reliability of the informant, Michael Green, the same informant. Somehow his information about the white Escalade is really important when it comes to Dave Anglin, but his information about the gray SUV and his information about the residence and all the other stuff isn't. So I would suggest that the distinctions my opponent tried to make there are really not terribly persuasive. What the panel there found persuasive and what Judge Clavert found persuasive were a few things. First of all, firsthand knowledge, and I'd like to talk about that for a second. This is the first thing Green says to Agent Hankins. He says, I'm living with a guy, and we've discussed our criminal histories involving armed robberies. Okay, that checks out. Green was previously convicted of bank robbery, and so was Dave Anglin. The agent was able to confirm those facts, and it makes sense out of why they would confide in one another about criminal activity, past criminal activity and future criminal activity. There was otherwise very little that the two men had in common. Michael Green was a Chicago native. He was older. Dave Anglin was a 25-year-old from Milwaukee, and incidentally this is what distinguishes the Bell case, which is cited for the first time in the defendant's reply brief, where the court was concerned that there had been no information presented. I think in that case it was a warrant, but there was no information about the nature of the informant's relationship with the defendant. Well, here we do have some context, and it helps to make sense out of why Michael Green would have been privy to Dave and Mike's plans. So I think that's a very important factor here. Much has been made about the retraction or the walking back of the three guns comment. I'm not sure that that really changes the probable cause calculus a great deal. One way of looking at that is that Green was trying to clarify a misunderstanding that had arisen about what he had seen. There isn't anything inherently nefarious about changing a minor detail like that. Now maybe if you've been all over the map changing the story a hundred times or something, you could say, well, they oughtn't to have trusted him, but here that's at least susceptible of a good interpretation. This is a cooperator who's trying to get it right. Some other things showed familiarity with the Anglins. Green had phone numbers for them in his cell phone. He was familiar with Michael Anglin's gray Acura and the residence where he lived. When he was shown photographs of those two things, he confirmed what they were. And then, of course, when they did surveillance on the morning of the 17th, they saw Michael Anglin come out of that residence and get into that car. So he had absolute confirmation of the identification that had been provided by the cooperator here. And, of course, ultimately he predicts the pickup location for Green approximately 45 minutes in advance down to the street intersection and the direction that they're going to head. This is another area where my opponent kind of gets in the weeds and he tries to suggest that they're heading in the wrong direction. We do have a factual disagreement here. I tried to cite the portions of the record that I think are relevant in my brief. The evidence was that they were going to meet up both out on the street. There's no evidence that I can see in this record of a specific plan to pick up Dave Anglin at his girlfriend's house. Can you speak to supervised release conditions? There's been a lot of case law in our circuit disapproving of some of the conditions Mr. Anglin received. And so don't you think remand is necessary so we can get some clarity? And if so, what's the scope of the remand? No, Your Honor, we don't think remand. Because there's some confusion, at least according to counsel, in terms of asking do I need to do anything more that that's subject to interpretation and wasn't specifically directed to the conditions of supervised release. Well, yes, Your Honor. For starters, there's some variation in how the district courts or district judges are responding to this court's case law. The district judge in Block apparently publishes his intended proposed conditions or her intended proposed conditions in advance. Here they appear in the PSR. I'm not sure it makes a whole lot of difference in terms of putting the defendant on notice of what the proposed conditions may be that the court will adopt and giving that defendant an opportunity to object formally in writing or at the sentencing hearing. That didn't happen in this case. My colleague, who argued at the sentencing hearing, did address those conditions in her remarks. And the judge, of course, also invited the parties to address any arguments that he had not fully taken into account. That would have been another point at which defense counsel could have leapt in and said, wait a minute, this particular condition is vague or it's overbroad or whatever the case may be. Instead, the defendant waited until his appeal to attack the substance of these conditions. And we would submit relying on Lewis that there's at least forfeiture here and the failure to object to terms that aren't going to take effect for many years and that can be corrected in the future anyway, just can't survive the third and fourth prongs of plain error because the situation doesn't call into question the fairness or integrity of judicial proceedings. So what do you think ought to happen? Let's say that the defendant was given the notice of the proposed conditions consistent with Lewis. And let's just assume for the sake of argument, and you may be right on this, that the district judge gave the defendant an appropriate opportunity at the sentencing hearing to object to any of the proposed conditions of supervised release and also to request a greater explanation of those conditions. Let's grant all of that. But assume with me that at least one or two of these conditions of supervised release have terminology that has been expressly disapproved by the Seventh Circuit. Do you think that we ought to do anything about that in this particular case? Well, I don't question that there's a problem with some of the language. I would concede that point. My argument is just that the defendant had an opportunity to say something about this and he didn't. Right, so we're under plain error review. That's why we're under plain error review. Exactly. So what's the problem with simply remanding with instruction to clarify the conditions of supervised release? So do we need to do that or have a full resentencing hearing, assuming we don't agree with you? There would be no problem with remanding for a limited purpose. I must say that in cases like this do illustrate the tremendous burden involved with a full remand or a full resentencing because it's a violent crime case and you've got to bring the victims in and they have to relive the thing all over again. It's simply a matter of bringing the defendant back to clarify supervised release conditions. We don't have any objection to that. And in terms of the procedure. And frankly, I don't want to get into a big debate with the court because it's a question that speaks for itself. You were answering another question, but I wanted to have it clarified. So what procedure do you think should be followed? Because the district, all the district court has to do is say, the conditions in the PSR are the conditions that I am planning to impose. Anybody have any objection? You know, because we've put so much light on this whole issue of supervised release. Well, it certainly couldn't hurt if the court wants to clarify what the preferred procedure is. We do have at least one judge in our district who does it the way the district judgment block did. And that would seem to really make things extra super clear. On the other hand, as you point out, these issues have been in the sunlight for some time now. They were well known at the time of this particular sentencing hearing, which is all the more reason to say, you know what? You had a chance to argue about this and you didn't do it. We can't say. The government can also make it super clear by saying, you know, you recognize these are the conditions, just want to put on the record these conditions are the conditions the court plans to impose. There's no objection by the defenses there. I mean, do you see that the government has any role in making sure it's done so we don't have to keep addressing these issues here in the Court of Appeals? Yes, and I know that at least some prosecutors in my office are making a very conscientious effort to do that. In this particular case, as I noted earlier, the prosecutor said, did allude to the proposed conditions and said, hey, at least from the government's perspective, there's no problem with these conditions, kind of leaving it in the defense counsel's court to say something at that point. But certainly to the extent the parties can iron these things out before the sentencing hearing even begins and agree about how to get things on the record, that would save this court a lot of hassle. I'm happy to address any of the remaining issues in the briefs, but if there are no questions, I will rest on our brief. Thank you, counsel. Anything further, Mr. Kansner? By referring to the unpublished decision in Dave's case, I think the government really highlights the fact that it cannot point to any actual precedent, any binding precedent that supports a finding of probable cause in this case, given all the uncertainties with regard to the informant and the total lack of clarity he was able to give about what the actual allegations were and what the actual crime was going to be. Also, counsel for the government says, oh, they could have had a brief investigative stop, kind of waving off what Terry allows. Terry gives police serious power, especially here when we're talking about an armed robbery investigation. They could have detained both of them for half an hour, 45 minutes. They could have handcuffed them. They could have removed them from the car. They could have asked for permission to search the car. They could have talked to Green alone and seen if he had produced any evidence. And, in fact, it turns out I think he had been using the recorder that they had given him at trial. Later evidence was produced from that. So there were certainly avenues that they could have taken and chose not to take. And our argument, again, is not that Green had no credibility whatsoever, that they shouldn't have believed him. It's just that at that particular point in time where really it's a ball of confusion, they're not sure what's happening, when the robbery is going to be, Dave is off somewhere else, they've never seen Michael and Dave together, they don't know what's happening. You need to take a deep breath, pump the brakes, and investigate further. If you have to stop them, if you feel like you have to intervene, conduct a Terry stop. That's all that we're saying. Now, and then one point about the retraction and the change of story about the number of guns, that's not a minor detail. That was the only fact, actually, that Green gave them that in and of itself was incriminating. All of these three people are felons. The fact that they possess guns is in and of itself illegal. Sitting around in the halfway house talking about, man, I'd like to maybe do a robbery someday, that's not a crime, that's just sort of idle chatter until something more happens. And when he changes his story about that key detail, that's important, not only just because of where it stands in the case, but because it shows he can't keep his story straight for whatever reason. With regard to the scope of remand on if the court gets to sentencing, our position is that this is exactly the kind of case where a full remand is warranted, given how little concern and little attention the district judge gave to this. Now, certainly, Judge Williams, you're spot on. Everyone has an obligation to make sure that these rules are followed. But there needs to be some opportunity. The district judge is the one leading the charge here. He needs to make sure that the rules of CAPAS are addressed, that people understand what's happening, and the record simply does not reflect that. It doesn't reflect that he thought about how supervised release might interact with the rest of the sentence. And that's why this court has granted remand for full resentencings even recently in Zamora and Mobley. Thank you very much. The case is taken under advisement.